NOT DESIGNATED FOR PUBLICATION

No. 128,588

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DAVID E. ROARK,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Submitted without oral argument. Opinion filed August 14, 2026. Affirmed.

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before BOLTON FLEMING, HILL and GARDNER, JJ.

PER CURIAM: David E. Roark appeals his jury convictions for kidnapping and sexual exploitation of a child, arguing that insufficient evidence supports each conviction. After considering the evidence in a light most favorable to the State, we conclude a rational fact-finder could have found Roark guilty of each crime beyond a reasonable doubt. Accordingly, we affirm.

1

Jane (pseudonym), age 13, lived in Bald Knob, Arkansas, where she resided with her mother and father. Jane often interacted with others on a virtual environment social platform called "IMVU." Through IMVU, Jane met another user by the name of "Eric," who told her that he was 16 years old and lived in Wichita, Kansas. In reality, "Eric" was David E. Roark, age 35, of Wichita, Kansas. Jane and Roark used a chat room inside IMVU and a messaging application called "TextNow" to communicate.

Over the next few months, Jane and Roark participated in private conversations that developed into a romantic relationship. Jane turned 14 during this time. As part of these interactions, Roark asked Jane to create a video of herself performing specific sexual acts. Jane created the video and sent it to Roark. In addition, many of the messages between Roark and Jane were sexual in nature.

The interactions between Jane and Roark continued over the next few months, and Jane and Roark agreed to meet in person. The two planned for Roark to drive to Arkansas to pick up Jane and return to Roark's residence in Wichita, Kansas. When the time came to execute the plan, Roark convinced a friend from work to drive him to Arkansas. Roark told Jane to tell the driver that she was 19. Roark arrived near Jane's residence and Jane recognized him from their online interactions and joined him in the vehicle.

The trio left Bald Knob and travelled until they stopped in El Paso, Arkansas to get gas. At Roark's request, Jane stepped out of the vehicle and threw her phone into a trashcan to avoid being tracked. The driver drove Roark and Jane to Wichita, Kansas where they were dropped off near Roark's home.

Jane remained in Roark's home for 32 days. Shortly after arriving at Roark's residence, Jane noticed a bald spot on the back of Roark's head and began to realize that Roark was not the age he had claimed.

Roark told Jane that he lived with his grandfather, but she never met him. Nonetheless, Jane largely remained in Roark's bedroom while Roark went to work because Roark told her he would get in trouble if his grandfather saw her. Jane snuck into the kitchen once when Roark was at work to make a peanut butter sandwich due to being unable to eat until Roark returned. Jane only showered and used the restroom once throughout her time at Roark's residence, instead using a cup and a bucket in the closet to relieve herself.

Jane and Roark were sexually active throughout her time at Roark's home, having sexual intercourse every day and, according to Jane, up to "four to five times a day." Sometimes, Roark would record these encounters. Roark told Jane that the only way she would be able to remain living with him and meet his grandfather was if she became pregnant. Roark withheld food from Jane or hit her if she refused to engage in sexual acts with him and told Jane that he would harm her and her family if she refused his advances.

Roark provided Jane with a cell phone, which he allowed her to use to remain in contact with him while he was at work and to play games. Jane chose not to contact anyone other than Roark because she feared he would harm her or her family. Roark checked Jane's phone every time he arrived home from work. Jane did not attempt to leave the home because she believed Roark would kill her.

*Law Enforcement Investigation*

After realizing her daughter was gone, Jane's mother called law enforcement in Arkansas. Law enforcement traced Jane's phone at its last known location, which was the

gas station in El Paso, Arkansas. Law enforcement obtained security footage from the gas station which showed three passengers exiting a vehicle, including Jane. The video also captured Jane throwing her phone in the trash.

Realizing that Roark had made a purchase at the gas station, Arkansas law enforcement obtained the credit card number associated with the purchase and after subpoenaing corresponding bank records, confirmed that the owner of the credit card was David Roark of Wichita, Kansas. The bank records reflected that Roark had recently used the same credit card for purchases at a Wichita Walmart and to get a ride through Lyft. Law enforcement obtained surveillance video from Walmart which showed Roark using the credit card. Lyft provided law enforcement with the address associated with its transaction. Law enforcement also obtained an IP address linked to Roark's TextNow account number and used it to confirm the address provided by the credit card company and Lyft.

Arkansas law enforcement then contacted law enforcement in Wichita to ask for their assistance. Through the efforts of Wichita law enforcement, a search warrant was obtained for the residence associated with Roark. Roark also had an arrest warrant for unrelated charges in Kentucky. Shortly after leaving his home to enter a Lyft vehicle, Roark was taken into custody on his arrest warrant. Officers then entered the home to execute the search warrant.

When officers entered and announced their presence, Jane did not respond. Roark had told Jane that if anyone came to the residence to hide in the closet. Officers eventually found Jane hiding under a blanket in the closet texting Roark, as Roark had instructed her. Jane told officers that her name was "Emma" and that she was 16 years old. After verifying the description of the missing child from Arkansas, and confirming that Jane was that child, Jane was taken to a Child Advocacy Center to be interviewed.

4

Jane was subsequently taken to the Wesley Medical Center to have a SANE/SART Exam conducted. Medical tests also confirmed that Jane was pregnant.

During the search, officers recovered a computer from Roark's bedroom that contained six videos of Jane involved in various sexual acts, including the video Jane initially made at Roark's request while still in Arkansas. Law enforcement obtained messages between Roark and Jane from the online services they used to communicate. Law enforcement later received the results of forensic testing that confirmed the DNA from the SANE/SART examination could not exclude Roark as the contributor of sperm cells collected from Jane's body.

*Roark's Interview*

Roark participated in an interview with law enforcement and initially denied any recent contact with Jane. He stated that he lived in a room he rented from a man he met on Craigslist. Roark later admitted that he had a romantic relationship with Jane that included sexual intercourse. Roark stated that he did not hold Jane hostage and that "he would have given her anything she asked for." Roark added that Jane was free to walk around Roark's home although he cautioned her that she could be seen by his roommate.

*Jury Trial and Sentencing*

Roark was charged and convicted by a jury of 18 different crimes including kidnapping, abuse of a child, 5 counts of aggravated indecent liberties with a child, 2 counts of criminal sodomy, and 9 counts of sexual exploitation of a child. Roark was sentenced to a mandatory minimum term of 25 years for one conviction, and a consecutive term of 122 months on the remaining convictions. At issue in this appeal is the sufficiency of evidence supporting two of Roark's convictions—kidnapping and one count of sexual exploitation of a child.

ANALYSIS

*DID SUFFICIENT EVIDENCE SUPPORT ROARK'S KIDNAPPING CONVICTION?*

*Standard of Review*

> "'When the sufficiency of the evidence is challenged in a criminal case, we review the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses.'" *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021).

*Discussion*

In Kansas, the crime of kidnapping is defined as the "taking or confining of any person, accomplished by force, threat, or deception." K.S.A. 21-5408(a). In Roark's case, the State elected to limit its theory and removed any allegation that Jane's kidnapping was accomplished by force or threat. Thus, the jury only considered whether Roark took or confined Jane by deception and whether this act occurred in Sedgwick County, Kansas.

On appeal, Roark first argues that the evidence supporting his kidnapping conviction was insufficient because he did not take Jane by deception. Roark also argues that any "taking" occurred in the state of Arkansas, not Kansas. Second, Roark alleges that there was insufficient evidence of "confining" because Jane remained in his bedroom voluntarily; and if there was any confinement, it was not caused by Roark's deception of Jane. We begin our analysis with Roark's deceptions.

6

*There is sufficient evidence of "deception."*

K.S.A. 21-5111(e) defines deception as "knowingly creating or reinforcing a false impression, including false impressions as to law, value, intention or other state of mind." Roark acknowledges that he made certain misrepresentations to Jane, including his age, identity, and the characterization of his roommate as his grandfather. But Roark's admissions minimize the evidence in the case.

Roark began deceiving Jane from the outset by falsely representing himself as a 16-year-old boy named "Eric." Jane relied on those deceptions when entering into a romantic relationship with Roark and deciding to travel with Roark to Kansas. When Roark arrived to execute the plan, Jane believed she was traveling to Kansas with someone close to her own age. Once in Kansas, Roark created another deception by instructing Jane she had to remain in the bedroom under the false notion that she needed to avoid being seen by his grandfather or risk being returned home and getting him in trouble. Roark also told Jane that the only way she could stay and meet his grandfather was by having sex with him and becoming pregnant. In fact, Roark did not live with his grandfather; rather, Roark rented a room from someone he met on Craigslist. We find that Roark's misrepresentations satisfy the statutory definition of "deception" found in K.S.A. 21-5111(e).

*There was sufficient evidence that Roark took Jane by deception.*

We pause here to note that evidence of taking *or* confining may be sufficient to support Roark's kidnapping conviction:

"[T]he phrase 'taking or confining' in K.S.A. 21-5408(a) does not present alternative means of committing kidnapping and aggravated kidnapping; rather, it presents options within a means merely describing the factual circumstances that may prove the material element—the actus reus—of holding the victim to accomplish one of the four alternative

7

means—each with distinct mens rea—of committing kidnapping." *State v. Garcia-Martinez,* 318 Kan. 681, 693, 546 P.3d 750 (2024).

We first focus on Roark's argument that any "taking" under K.S.A. 21-5408(a) occurred in Arkansas rather than Kansas. Roark's argument is that because any "taking" occurred in Arkansas, the taking did not occur in Sedgwick County, Kansas—a necessary element of the crime.

Roark's argument ignores Kansas law regarding territorial jurisdiction, which is found in K.S.A. 21-5106. This statute provides that Kansas courts have territorial jurisdiction when a defendant "commits a crime wholly or partly within this state." K.S.A. 21-5106(a)(1). The statute further defines what it means to commit a crime partly within Kansas:

> "(b) A crime is committed partly within this state if:
>     (1)  An act which is a constituent and material element of the offense;
>     (2)  an act which is a substantial and integral part of an overall continuing criminal plan; or
>     (3)  the proximate result of such act, occurs within the state." K.S.A. 21-5106(b).

Put differently, "[t]he State of Kansas has jurisdiction in a criminal case in which any element or the result of the crime occurs in Kansas . . . ." *State v. Grissom*, 251 Kan. 851, Syl. ¶ 5, 840 P.2d 1142 (1992). In *Grissom*, at issue before our Supreme Court was whether there was subject matter jurisdiction where crime victims were abducted in Kansas but murdered in Missouri. The court concluded, "There is evidence from which a jury could find that Grissom committed criminal acts in Kansas which were a substantial and integral part of an overall continuing crime plan and which were in partial execution of the plan." *Grissom*, 251 Kan. at 889.

8

Similarly, Roark's plan was to take Jane from Arkansas to Kansas for the purpose of continuing a sexual relationship with an underage child. Roark executed the plan by picking up Jane in Arkansas and bringing her to his home in Kansas where he perpetrated crimes against Jane. Roark's action in taking Jane from Arkansas to Kansas was an "integral part of an overall continuing crim[inal] plan. . . ." 251 Kan. at 889. Accordingly, Roark's sufficiency argument related to the location of the "taking" is without merit.

Next, we address Roark's argument that the State limited its kidnapping theory to confinement. K.S.A. 21-5408(a) defines kidnapping as the taking *or* confinement of a person. Roark argues that the prosecutor's comments indicated that the State was narrowing its argument further to only confinement, but this is not supported by the record. The prosecutor repeatedly referred to Roark's actions as both taking and confining Jane. And the jury instruction for the kidnapping charge included the language "took or confined [Jane] by deception." This finding is important, because Roark has only attacked the sufficiency of evidence as to the "taking" on the basis it did not occur in Kansas. He does not otherwise challenge the sufficiency of evidence on whether Roark took Jane as an element of kidnapping. "Issues not briefed are deemed waived or abandoned." *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021).

In *State v. Damewood*, 245 Kan. 676, 783 P.2d 1249 (1989), our Supreme Court considered the sufficiency of evidence supporting an aggravated kidnapping conviction that was based on the theory of taking by deception. Damewood met a 14-year-old boy at a farm auction and made arrangements with the boys' parents for him to assist in his beekeeping. Damewood transported the boy to a remote site, under the pretense of working on the beekeeping operation, but once there, committed sexual acts on the boy. Damewood committed the crime using the same deception approximately one month later. After this second incident, the boy told his parents and Damewood was prosecuted.

On appeal, Damewood argued that insufficient evidence supported his conviction for aggravated kidnapping. He argued that because the incidents happened in an open field, the boy had the ability to escape and could not have been taken. The court rejected that argument, finding, "Defendant does not indicate why deception did not exist as a matter of law and provides no support for his argument that, because J.A. had access to open fields, J.A.'s alleged ability to escape precluded an initial taking by deception." 245 Kan. at 687. The court concluded, "Here, J.A. and his parents testified that defendant hired J.A. to assist the defendant in locating suitable areas for the placement of bees. On this pretext, J.A. was induced to accompany the defendant to an isolated area where the commission of the crimes, without the risk of detection, was facilitated." 245 Kan. at 687.

Similarly, we find sufficient evidence pursuant to K.S.A. 21-5408(a) that Roark took Jane by deception. Roark developed a relationship with a 13-year-old child based on the deception that he was only 16. Based on that deception, Jane entered the relationship and left with Roark to pursue the relationship. Once in Kansas, Roark perpetrated multiple sexual crimes against Jane. This evidence is sufficient to support Roark's kidnapping conviction based on the theory of a "taking" by "deception." K.S.A. 21-5408(a).

*There was sufficient evidence that Roark confined Jane by deception.*

We next consider Roark's argument that there was insufficient evidence of confinement by deception. Roark reasons that because there was evidence in the record that Jane came to his home voluntarily, there can be no confinement. He also points out that Jane was not held against her will and had opportunities to leave Roark's home.

While the Kansas Criminal Code does not fine the term "confine," it has been in used in the context of kidnapping to mean "the act of imprisoning or restraining." *Garcia-Martinez*, 318 Kan. at 692. Certainly, confinement is more obviously proven in cases

10

where threat or force is used to achieve confinement. In *Garcia-Martinez*, the victim entered the defendant's home willingly, but when he tried to leave, was struck in the head with a crowbar, beaten, and restrained. "This evidence established that Garcia-Martinez seized or obtained control over Hayden. Thus, a rational fact-finder could conclude that a taking occurred. And these same facts also could be viewed as evidence of confinement because they establish the act of imprisoning or restraining." 318 Kan. at 692.

The evidence of confinement in the present case does not involve the use of force. But evidence of physical restraint is unnecessary when kidnapping is accomplished by deception rather than force. A kidnapping may occur when a person is confined through deception. See K.S.A. 21-5408.

Roark contends that even if he did deceive Jane, none of his misrepresentations *caused* Jane's confinement. Roark offers no legal support for his argument that Jane could not be confined as a matter of law because she came to the home on her own volition and could have left while Roark was at work. "Failure to support a point with pertinent authority or failure to show why a point is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue." *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). Roark's argument also ignores the evidence in the case.

A conviction may be supported, in whole or in part, by circumstantial evidence. *State v. Lopez*, 36 Kan. App. 2d 723, 725, 143 P.3d 695 (2006). There is significant circumstantial evidence in this case that demonstrates the connection between Roark's continued deceptions and Jane's confinement. The record reflects that Jane was at Roark's house for 32 days, and only once left his bedroom to shower and use the bathroom. For over a month, Jane relieved herself by using a cup and bucket in Roark's closet. Roark gave Jane a cell phone to communicate with him while he was at work, and play games, but Roark checked Jane's usage of the phone daily. Roark withheld food and struck Jane

11

if she did not comply with his sexual commands. When the police arrived, Jane did not exit but hid in the closet with a blanket over her head, texting Roark, because that is what Roark told Jane, a 14-year-old child, she was supposed to do.

The jury was allowed to make reasonable inferences from the circumstantial evidence in the case. "'A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable one, the jury has the right to make the inference.'" *Aguirre*, 313 Kan. at 209. The jury in this case could have reasonably inferred that Jane's continued confinement was caused by Roark's deception.

A jury could have reasonably concluded that had Jane known that Roark had lied to her about his age and his intentions or known that Roark's roommate was not his grandfather but a stranger with no familial connection, Jane would have attempted to leave the residence or taken other steps to stay safe. It is not the role of this court to reweigh the evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. *State v. Hayden*, 281 Kan. 112, 132, 130 P.3d 24 (2006). Sufficient evidence supports Roark's kidnapping conviction.

*DID SUFFICIENT EVIDENCE SUPPORT ROARK'S CONVICTION FOR SEXUAL EXPLOITATION OF A CHILD?*

Next, Roark argues that there was insufficient evidence to support one of his convictions for sexual exploitation of a child. Count 18 arose from the video Jane sent to Roark depicting herself engaging in sexually explicit conduct. Roark contends that Jane was already predisposed to this behavior, and ready and willing to create the video prior to his encouragement to do so, and accordingly, the evidence was insufficient to support the conviction.

12

*Standard of Review*

We consider Roark's sufficiency challenge by reviewing "'the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *Aguirre*, 313 Kan. at 209.

*Discussion*

Roark was convicted of sexual exploitation of a child pursuant to K.S.A. 21-5510(a)(1) and (b)(2). Under K.S.A. 21-5510(a)(1), sexual exploitation of a child is defined as "[e]mploying, using, persuading, inducing, enticing, or coercing a child under 18 years of age, or a person whom the offender believes to be a child under 18 years of age, to engage in sexually explicit conduct with the intent to promote any performance."

The district court instructed the jury that to establish the charge of sexual exploitation of a child, the State needed to prove:

> "1. David Roark, with the intent to promote a performance, employed, used, persuaded, induced, enticed, coerced R.M. to engage in sexually explicit conduct.
> "2. R.M. was less than 14 years old at the time the conduct occurred. The State need not prove David Roark knew the child's age.
> "3. David Roark was 18 or more years old at the time.
> "4. This act occurred on or about the 27th day of August, 2022, in Sedgwick County, Kansas.
>
> "The State must prove that the defendant acted intentionally. A defendant acts intentionally when it is the defendant's conscious objective or desire to do the act complained about by the State."

Thus, the jury was able to consider the evidence supporting each of the different factual ways Roark could have committed the crime of sexual exploitation. Roark

13

acknowledges that he played some role in the video created by Jane, but argues that he "merely encouraged [Jane] to engage in conduct that she was already prepared to engage in." Roark believes that his actions fall short of the required actions contained in the definition of sexual exploitation of a child found in K.S.A. 21-5510(a)(1).

In support of his argument, Roark notes that the Kansas Criminal Code does not define the terms "employ, use, persuade, induce, entice, or coerce," and asks us to apply dictionary definitions for each of those terms. "Absent some specialized statutory definition, the words of a statute typically should be given their ordinary meaning. And dictionaries (not surprisingly) supply those meanings [Citations omitted]." *State v. Baumgarner*, 59 Kan. App. 2d 330, 335, 481 P.3d 170 (2021).

Roark refers us to Black's Law Dictionary for definitions of several of the terms in K.S.A. 21-5510(a)(1). He notes that "employ" is defined as "(1) to make use of; or (2) to hire." The term "use" is defined as "(1) to employ for the accomplishment of a purpose, and (2) to take advantage of someone for selfish purposes, to make a person an involuntary means to one's own ends." The term "persuade" is defined as "(1) to induce another to do something, to make someone decide to do something, especially by giving reasons; and (2) to convince." The definition of "entice" is "to lure or induce." And the definition of "coerce" is "[t]o compel by force or threat." Roark notes the term "induce" is not defined in Black's Law Dictionary and so he instead provides a definition from the Merriam-Webster dictionary: "to move by persuasion or influence." Roark also offers alternative definitions from other dictionary sources for each term.

Roark reasons that because each of these terms has more than one meaning, we should apply a canon of construction, *noscitur a sociis*, which requires us to compare the elements of this list of actions to determine the meaning of any one of the terms. See *State v. Spencer*, 291 Kan. 796, 808, 248 P.3d 256 (2011). Roark argues that by making such a comparison in this case, "the obvious connection between all these terms is that

14

the actor moves or convinces another person to take an action, either in exchange for something, or due to some persuasive argument or threat." Roark argues that if someone is already predisposed to take such an action, there is insufficient evidence to support the definition.

Even if we apply the "common definition" Roark urges to adopt, considering the evidence in a light most favorable to the State, we find sufficient evidence that Roark convinced Jane to make a sexually explicit video. At trial, the messages between Jane and Roark that led to the video being created were entered into evidence. These messages reflect that Roark initiated sexually explicit conversations that included his request that Jane create and send a sexually explicit video to him. The evidence overwhelmingly shows that Roark was much more than just an encourager. The evidence reflects that Roark not only initiated the idea but gave Jane specific instructions as to how to create the video. Roark instructed Jane, "First, take a good length video of you. . . ." Roark instructed Jane as to the specific sexual acts she was to perform, and to make the statement, "I love you Daddy." Roark told Jane the angle of the camera shots he wanted and what additional body parts should be included. At one point, Jane told Roark, "[I don't know] how to do this," to which Roark responded with more specific, explicit instructions. In fact, Roark told Jane to "[m]ake it exactly [as] I described." Jane told Roark, "Baby I can't do it (I'm getting kinda frustrated) I can send something else." Roark's response was, "You can do it. And you're going to. No feeling self conscious or excuses. I've been waiting this whole time for it. Now make it."

Finally, Roark provides no authority in support of his argument that a child who is predisposed to committing a sexual act cannot be employed, used, persuaded, induced, enticed or coerced to "engage in sexually explicit conduct with the intent to promote any performance." K.S.A. 21-5510(a)(1). Roark's failure to support his argument with pertinent authority is no different than failing to brief the issue. *Meggerson*, 312 Kan. at 246.

15

Viewing this evidence in a light most favorable to the State, a rational fact-finder could conclude that Roark convinced Jane to create the sexually explicit video. Sufficient evidence supported Roark's conviction for sexual exploitation of a child.

Affirmed.